Frederick HOPTOWIT, et al.,
Plaintiffs-Appellees,

v.

John SPELLMAN, et al.,
Defendants-Appellants.

No. 83–4284.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1984.

Decided Feb. 12, 1985.

Timothy K. Ford, American Civil Liberties Union, Richard P. Blumberg, Mark & Blumberg, Seattle, Wash., for plaintiffs-appellees.

William C. Collins, Sr. Asst. Atty. Gen., Dept. of Corrections, Olympia, Wash., for defendants-appellants.

Before DUNIWAY, FERGUSON, and NELSON, Circuit Judges.

DUNIWAY, Circuit Judge:

This is the second appeal in this case. In the prior appeal, *Hoptowit v. Ray*, 9 Cir., 1982, 682 F.2d 1237 (*Hoptowit I*), we affirmed in part, reversed in part, and remanded for further proceedings. Our decision in *Hoptowit I* is the law of the case, *see Planned Parenthood of Central and Northern Arizona v. Arizona*, 9 Cir., 1983, 718 F.2d 938, 949; *Moore v. Jas. H. Matthews & Co.*, 9 Cir., 1982, 682 F.2d 830, 833–35, and we are required to follow it, absent special considerations that are not present here. In this opinion we assume that the reader is familiar with our decision in *Hoptowit I.*

I. *Failure to Reopen the Record.*

After our mandate went down, the trial judge set a date for a hearing on the remanded issues, in November, 1982. Shortly before that hearing, the State had filed a motion for declaratory judgment, asking the court to declare that the penitentiary meets or exceeds the constitutional minima in areas including physical brutality and medical care. At the opening of the hearing the State asked the district court to determine whether or not it was in compliance in those areas. The state also moved for relief from the judgment under Fed.R. Civ.P. 60(b) on the ground that conditions at the penitentiary had improved. The judge allowed the State to file evidence relating to the issue of changed circumstances, but ruled that the appropriate time to consider such evidence would be at a later compliance hearing. He limited the hearing "to enter[ing] an order in conformance with the Ninth Circuit." The judge entered the Order on Remand in May, 1983, and the State appeals.

The State argues that it was error for the district court to refuse to conduct a hearing regarding alleged new defendants and changed circumstances before issuing its order on remand. We hold that the district court did not abuse its discretion.

A. *New Defendants.*

■ The State argues that the named defendants have been succeeded by others,

and, therefore, the district court erred by failing to conduct a hearing to determine whether the new administration has continued and will continue the unconstitutional practices of its predecessors. The State maintains that such a hearing is required under *Mayor of City of Philadelphia v. Education Equality League*, 1974, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630, and *Spomer v. Littleton*, 1974, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694.

The complaint named as defendants the Governor of the State of Washington, the Secretary of its Department of Social and Health Services (the agency responsible for the operation of the penitentiary at that time), as well as various officials within the Corrections Division of that Department. The complaint named these defendants in both their personal and official capacities. The State says that each of the named defendants has either left office or changed position. It also says that, in 1981, a new Department of Corrections was created to administer the Washington State adult corrections program.

Those changes did not require the district court to reopen the record before issuing its order on remand. First, the two defendants principally responsible for the administration of the penitentiary remain in control; they have simply been promoted. Lawrence Kinchloe, formerly the Associate Superintendent, is now the Superintendent. James Spaulding, formerly the Superintendent, is now the Deputy Director of the Division of Prisons of the new Department of Corrections.

Second, the successors of the named defendants, although not named, are themselves parties by reason of Fed.R.Civ.P. 25(d)(1):

When a public officer is a party to an action in his official capacity and during its pendency dies, resigns or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party.

The State argues that, despite this rule, an injunction cannot be issued against a

successor to public office without "supplemental findings of fact indicating that the new officer will continue the practices of his predecessor," *Mayor, supra,* 415 U.S. at 622, 94 S.Ct. at 1334, citing *Spomer, supra.* Cases in other circuits have applied the *Mayor-Spomer* analysis. *See Kincaid v. Rusk,* 7 Cir., 1982, 670 F.2d 737, 741; *A.C.L.U. v. Finch,* 5 Cir., 1981, 638 F.2d 1336, 1345–47. *But see Santiago v. Corporacion de Renovacion, etc.,* 1 Cir., 1977, 554 F.2d 1210, 1213. However, *Mayor* and *Spomer* involved circumstances quite different from those here. *Mayor* was "a case devoted exclusively to the personal appointment policies of [the new mayor's] predecessor." *Mayor, supra,* 415 U.S. at 613, 94 S.Ct. at 1329. *Spomer* involved alleged racial discrimination by a former State's Attorney. As the Court said, "[t]he wrongful conduct charged in the complaint is personal to [the former official], despite the fact that he was also sued in his then capacity as State's Attorney." *Spomer, supra,* 414 U.S. at 521, 94 S.Ct. at 689.

In this case, most of the evidence does not relate to the personal conduct of the principal named defendants. In *Hoptowit I,* we affirmed various findings of fact concerning institutional practices and physical conditions at the penitentiary. These are facts "from which the continuation of the dispute is a reasonable inference," *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners, etc.,* 5 Cir., 1980, 622 F.2d 807, 822, and not merely "idiosyncratic abuses of the particular members of the outgoing administration," *A.C.L.U. v. Finch, supra,* 638 F.2d at 1346–47. This case fits squarely within the principle stated in the Advisory Committee Notes to Rule 25(d)(1):

> In general it will apply whenever effective relief would call for corrective behavior by the one then having official status and power, rather than the one who has lost that status and power through ceasing to hold office.

■ Moreover, we do not read the record as showing a fixed determination by the judge that all of the named defendants'

successors must be kept in the case as defendants. Rather, we conclude that, at most, the record only shows that the court elected to decide, first, what findings it should make and what conclusions it should reach in the light of our remand in *Hoptowit I,* and then decide what it should do in response to the successors' arguments. Surely, when two or three motions are presented to a court, it has discretion to decide the order in which it would consider and decide them. A party claiming abuse of that discretion has a heavy burden of persuasion. We do not think that the burden has been met here.

### B. *Changed Circumstances.*

The State argues that the district court abused its discretion by failing to reopen the record in the light of the time which had elapsed between trial (May, 1980) and the Order on Remand (May, 1983) and in the light of alleged improvements at the penitentiary. We disagree.

#### 1. *The motion was deficient.*

■ The motion did not comply with the Rules of the United States District Court for the Eastern District of Washington. E.D. Local Rule 11(c) requires that a moving party serve and file a memorandum of points and authorities *"with the motion"* (original italics). The State's motion for Declaratory Judgment was filed before the remand hearing. However, the State did not file its accompanying brief until after the hearing had taken place. Under E.D. Local Rule 11(i),

> A failure to timely file a memorandum of points and authorities in support of or in opposition to any motion may be considered by the Court as consent on the part of the party failing to file such memorandum to the entry of an order adverse to counsel in default.

#### 2. *The court did not abuse its discretion.*

■ During the hearing the State again raised its claims in a motion for relief from the judgment under Fed.R.Civ.P. 60(b).

Such a motion is addressed to the discretion of the district court. *Martella v. Marine Cooks & Stewards U.*, 9 Cir., 1971, 448 F.2d 729, 730.

■ The district court correctly explained that the purpose of the remand hearing was to follow the instructions of this court and order an appropriate remedy for Eighth Amendment violations found at the penitentiary. The court acted within its discretion in refusing to review the State's evidence of alleged compliance until after the issuance of the order on remand.

## II. *Eighth Amendment Violations.*

In its original opinion, the district court found that various aspects of the penitentiary's "old, dilapidated, and ill-maintained" physical plant have "serious health implications." *Hoptowit I,* 682 F.2d at 1256. More specifically, the district judge found: overcrowding, substandard lighting, unsatisfactory plumbing, substandard fire prevention, substandard food service, vermin infestation, lack of an effective maintenance program, inadequate ventilation, safety hazards in the occupational areas, unavailable or inadequate cell cleaning supplies. We affirmed these findings of fact, except the finding regarding overcrowding. *Id.*

On the basis of these findings, the district court concluded that "the general condition of [the penitentiary's] physical facilities when considered in their totality ... falls below minimum standards of decency and conditions of confinement and violates [p]laintiffs' Eighth Amendment rights." *Id.* We reversed this conclusion of law on the ground that the district court improperly applied the "totality of conditions" analysis. We instructed the district court on remand to "consider each finding and decide whether each condition amounts to an unnecessary and wanton infliction of pain." *Id.* We added: "Of course, each condition can be considered in light of other conditions." *Id.*

The district court followed this direction, and concluded that each of several of the conditions did violate the Eighth Amend-

ment. On this appeal, the State attacks the district court's legal conclusions as to several of these conditions. We review these conclusions *de novo. Hoptowit I,* 682 F.2d at 1245.

### A. *Inadequate Lighting.*

■ Adequate lighting is one of the fundamental attributes of "adequate shelter" required by the Eighth Amendment. The district court's conclusion that the lighting at the penitentiary violated the amendment is based upon evidence that the lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue and hindered attempts to insure that basic sanitation was maintained. We uphold the district court's conclusion.

### B. *Plumbing.*

■ Plumbing at the penitentiary is in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being. Such conditions amount to cruel and unusual punishment under the Eighth Amendment. *Ramos v. Lamm,* 10 Cir., 1980, 639 F.2d 559, 567–69; *Gates v. Collier,* 5 Cir., 1974, 501 F.2d 1291, 1300–03. We uphold the district court's conclusion.

### C. *Vermin.*

■ The district court found vermin infestation throughout the prison. It concluded that such a condition is inconsistent with the adequate sanitation required by the Eighth Amendment. We agree. The health hazard caused by vermin at the penitentiary is exacerbated by the plumbing and ventilation inadequacies. Such vermin infestation, properly considered in the light of unsanitary conditions such as standing water, flooded toilets and sinks, and dank air, is an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

### D. *Fire Safety.*

■ The district court concluded that the substandard fire prevention at the

penitentiary endangered the prisoners' lives and therefore violated the Eighth Amendment. Prisoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions. *Leeds v. Watson,* 9 Cir., 1980, 630 F.2d 674, 675–76.

### E. *Ventilation and Air Flow.*

 The lack of adequate ventilation and air flow undermines the health of inmates and the sanitation of the penitentiary, *see Ramos, supra,* 639 F.2d at 569. We agree with the district court's conclusion that the condition violates the minimum requirements of the Eighth Amendment. *Id.* at 568.

### F. *Safety Hazards.*

The district court found "serious" safety hazards in the occupational areas.

 Persons involuntarily confined by the state have a constitutional right to safe conditions of confinement. *See Youngberg v. Romeo,* 1982, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28; *Santana v. Collazo,* 1 Cir., 1983, 714 F.2d 1172, 1183. Not every deviation from ideally safe conditions amounts to a constitutional violation, *see, e.g., Santana* at 1183. However, the Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety. This is required because inmates, by reason of their confinement, cannot provide for their own safety. *Santana, supra,* 714 F.2d at 1183. *See also Estelle v. Gamble,* 1976, 429 U.S. 97, at 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251. We conclude that the safety hazards found throughout the penitentiary's occupational areas, exacerbated by the institution's inadequate lighting, seriously threaten the safety and security of inmates and create an unconstitutional infliction of pain.

### G. *Inadequate Cell Cleaning Supplies.*

 This problem must be evaluated in the light of the overall squalor at the penitentiary. Failure to provide adequate cell cleaning supplies, under circumstances such as these, deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment. *See Ramos, supra,* 639 F.2d at 570.

### H. *Segregation and Protective Custody.*

 The State challenges portions of the district court's order on remand regarding physical plant aspects of segregation and protective custody units at the penitentiary. It does not challenge this order with respect to the penitentiary's isolation units. Although the State considers segregation and protective custody together, the district court considered them separately, and so do we.

#### 1. *Segregation.*

In *Hoptowit I,* at 1257, we set out the judge's findings relating to segregation. We do not repeat them here. We held that they were not clearly erroneous. On remand, the judge made similar findings, omitting two, numbered 4 and 6, comparing segregation to isolation, and stating the difficulty prisoners have in working their way out of segregation. The new findings are still not clearly erroneous.

#### 2. *Protective custody.*

In its brief, the State says:

"The protective custody findings on remand do not specifically mention physical plant conditions." Here is what the findings say:

25. Conditions in the protective custody section of WSP exhibit the same or greater deficiencies as conditions elsewhere in the penitentiary area and failed to adequately promote the purposes for which protective custody exists. These conditions cause the prisoners housed in protective custody to live in an atmosphere of fear, vulnerability, and frustration.

We do not understand the State's position.

The judge also found that protective custody guards regularly subjected protective

custody prisoners to harassment and racial slurs and threatened to return those prisoners to the general population. The State does not attack this finding, which we held not clearly erroneous in *Hoptowit I*, at p. 1257. We have not changed our minds.

## III. *Relief.*

■ The State argues that the following portions of the district court's order on remand, relating to physical plant, segregation and protective custody, are overbroad:

> [Penitentiary] officials shall operate and maintain the penitentiary physical plant so that inmates receive adequate food, shelter, clothing, sanitation, medical care and personal safety.

> [Penitentiary] officials shall provide inmates in protective custody ... [and] segregation ... with adequate food, clothing, shelter, sanitation, personal safety and medical care.

We agree.

There is no finding that there was not adequate food or adequate clothing in the prison. To that extent the order is overbroad. Moreover, while the court's language is taken almost verbatim from our opinion in *Hoptowit I*, at p. 1258, and appears verbatim in *Wolfish v. Levi*, 2 Cir., 1978, 573 F.2d 118, 125, which we cited, it does not follow that it is good language to embody in an injunction.

We agree with the view that the court should not try to tell the administrators of the prison how to cure the unconstitutional conditions that the court found. The administrators presumably know more about how to run a prison, and how to improve conditions there, than the judge does. Doing those things is their business, not that of the court. The court was wise in not trying to take over the management of the prison.

■ However, as we said in *Hoptowit I*, the judge "must order the correction of specific violations ... and may require only that these corrections bring the conditions above constitutional minima." *Hoptowit I, supra*, 682 F.2d at 1257. The injunction should refer to the specific violations and

order their correction. It need not tell the defendants how to do the correcting. The court can, and perhaps should, monitor what is being done in response to the order. That is a question for the district court to decide. As we said in *Hoptowit I*, the remedy should be "tailored to correct the specific violation and no more obtrusive than to satisfy the constitutional minima," p. 1258. The judge should do some cutting and fitting.

## IV. *Conclusion.*

We affirm the district court's findings of fact and conclusions of law. We vacate the following provisions of the court's order of May 20, 1983:

Part IV, paragraph 7, and Part V, paragraph 8. In all other respects, we affirm the order. The case is remanded to the district court for further proceedings consistent with this opinion. The appropriate individuals who have succeeded the defendants originally named should be brought into the case, and named as defendants. The injunction may also be phrased to run against other successors who may take office hereafter.

Affirmed in part, vacated in part, and remanded.