Kenneth WILLIAMS, Plaintiff,

v.

Reginald WILKINSON,
et al., Defendants.

No. 97–CV–213.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 20, 2001.

William A. Nolan, Jill S. Kirila, Squire Sanders & Dempsey, Columbus, OH, for plaintiff.

J. Eric Holloway, Ohio Atty. Gen., Columbus, OH, for defendants.

## OPINION AND ORDER

MARBLEY, United States Magistrate Judge.

### I. INTRODUCTION

The Plaintiff, Kenneth Williams, an inmate at the Madison Correctional Institute, brought suit against Defendants Curtis Wingard and Pat Sharpe, alleging that his right to procedural due process under the Fourteenth Amendment was violated when he was not permitted to bring witnesses before the Rules Infraction Board. On December 7, 2000, the jury returned a verdict on the Plaintiff's legal claims, awarding the Plaintiff $2,107.22 in damages. This matter is now before the Court on the Plaintiff's Renewed Motion for Injunctive Relief and to Set Hearing to Set Terms of Injunction, filed on December 15, 2000. For the following reasons, the Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

### II. PROCEDURAL HISTORY

The Plaintiff, Kenneth Williams, is an inmate at the Madison Correctional Institute ("MaCI"). On February 13, 1996, Mr. Williams was given a conduct report stating that he had tested positive for marijuana. The Plaintiff states that he did not provide the urine specimen; rather, another inmate, Allen Williams, provided it. The Plaintiff was not permitted to call Allen Williams or Ms. Sharpe, the Substance Abuse Coordinator at MaCI, to testify before the Rules Infraction Board ("RIB"). The RIB concluded, without allowing Allen Williams to testify, that he would not be a credible witness. The Plaintiff proceeded to his hearing without either Allen Williams's or Ms. Sharpe's testimony and was found guilty. On February 7, 1997, this suit was filed by Mr. Williams; on June 26, 2000, this Court granted the Plaintiff's Motion for Appointment of Counsel.

On November 6, 2000, the Plaintiff filed a Motion to Rule as a Matter of Law that Defendant Wingard's Policy Violated the Plaintiff's Fourteenth Amendment Rights. In that Motion, the Plaintiff requested that this Court issue an injunction against Defendant Wingard in his official capacity, forbidding him from continuing the unconstitutional policy of denying witnesses at RIB hearings based on a predetermination of the witnesses' credibility. The Court, on November 29, 2000, denied the Plaintiff's Motion and stated:

If, following trial, it is determined that injunctive relief is necessary, this Court will conduct an additional hearing to explore the requirements outlined by 18 U.S.C. § 3626(a)(1)(A), including: what would constitute "narrowly drawn" relief, what would be the "least intrusive means," and what would be the "adverse impact on public safety." If necessary, the Court will at that time have the Defendants "come forward with a plan for the implementation of a new prison policy regarding requests for witnesses." *Whitlock v. Johnson*, 153 F.3d 380, 389 (7th Cir.1998).

On December 7, 2000, the jury returned a verdict for the Plaintiff, and against De-

fendants Wingard and Sharpe, in the amount of $2,107.22. On December 15, 2000, the Plaintiff filed his Renewed Motion for Injunctive Relief and to Set Hearing to Set Terms of Injunction. On January 8, 2001, the Defendants filed their Response. This Court conducted a hearing on this matter on January 17, 2001.

## III. ANALYSIS

The Plaintiff requests that the Court enter an injunction against Defendant Wingard in his official capacity and order the following measures:

  (i) Implement a written policy that any MaCI inmate defending himself in a Rules Infraction Board hearing, including but not limited to a hearing arising out of an alleged positive drug test of the inmate, shall be entitled to have the witnesses he requests be present at said RIB hearing absent an overriding security or institutional concern, which overriding concern shall not include (a) either a determination of MaCI personnel prior to said hearing that any such witness would not be credible or (b) a determination that testimony about a drug test is unnecessary because of the existence of documentation showing a positive drug test.

  (ii) A copy of the completed Jury Interrogatories dated December 7, 2000, and Judgment dated December 11, 2000, in this case shall be placed and permanently maintained in any file maintained at MaCI or by MaCI personnel making any reference to Mr. Williams's conviction of a Rule II, Class 7 at the RIB Hearing conducted March 19, 1996.

  (iii) There shall be no retaliation against Mr. Williams arising out of or relating to this lawsuit.

### A. MaCI's Policies Under the Due Process Clause

The Defendants first argue that no blanket policy exists at MaCI that bars the calling of witnesses at disciplinary hearings, and that their policies comply with *Wolff* and the requirements of the Procedural Due Process Clause of the Fourteenth Amendment. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court found that prisoners are guaranteed certain procedural protections under the Due Process Clause of the Fourteenth Amendment. In the context of disciplinary proceedings, prisoners are granted the right to call witnesses unless doing so would cause a security concern. *Id.* at 566, 94 S.Ct. 2963.

In this case, the Defendants may be correct—that the *written* policies of MaCI comply with the mandates of *Wolff*—however, the Court finds that the *unwritten* policies of MaCI do not. The written policies of MaCI's Inmate Disciplinary Manual provide: "It is improper to deny a witness merely because the RIB feels the testimony would not be beneficial or credible. Such determinations can be made only after the witness has testified." The Court finds that this written policy complies with *Wolff* and the due process clause.

In contrast, the testimony provided by Lieutenant Fisher, Chairperson of the RIB at MaCI, illuminated MaCI's *unwritten* policy with respect to witnesses requested by an inmate to appear before the RIB. In her deposition, Lieutenant Fisher was asked: "Has it ever happened that an inmate asked to call a particular witness and you determine that the witness was not permitted because the testimony that the inmate expected from the witness would not be credible?" Lieutenant Fisher responded: "If I don't think that it would be credible, I can deny based upon what he has stated, but I would do that on my own terms, I wouldn't do it by calling the person that he's requesting to testify."

And, at trial, Lieutenant Fisher stated: "I will deny a witness if I do not have anything to back up that the witness' statement would be credible to the charges." When Lieutenant Fisher was

asked: "If you believe a witness' testimony is not credible, then it will not be admitted; is that true?" To which, she responded: "That is correct, I can do that." The Court finds that this unwritten policy is in sharp contrast to MaCI's written policy. The unwritten policy allows the denial of a witness because the RIB "feels" he or she would not be credible. Warden Wingard's deposition testimony concerning the "right to call" witnesses further demonstrates that MaCI's unwritten policy violates the procedural due process clause. Defendant Wingard testified that the inmate has a right to "call" a witness which he defined as the right to "request" a witness. That request, according to Defendant Wingard, does not have to be granted. During trial, Warden Wingard elaborated as to what he believed an inmate's "procedural due process right to call witnesses" included:

Q: Your interpretation that—that this sentence, "An inmate has a procedural due process right to call witnesses," you interpreted that to mean he has the right to request witnesses; isn't that right?

A: Oh, absolutely.

Q: And that was the practice under you at Madison; right?

A: That an inmate had a right to call or request witnesses?

Q: Request witnesses?

A: Yes.

Q: Okay. And that the inmate has a right to call them but not to have them?

A: The inmate has a right to request them.

Q: And not to have them?

A: Correct.

(p. 128–29). The Court concludes that MaCI's unwritten policy does not comply with the mandates of *Wolff.* As Lieutenant Fisher testified, this unwritten policy does not permit witnesses to testify if the RIB predetermines that they lack credibility. As Defendant Wingard stated,

MaCI's policy that permits inmates to call witnesses does not mean the witnesses will actually testify—especially when Lieutenant Fisher believes they will not be credible. The Court therefore finds the unwritten policy at MaCI to be in violation of *Wolff,* and to be in violation of the due process clause of the Fourteenth Amendment.

## B. Plaintiff Williams has Standing to Bring Suit

■ Having found that the Defendants' policy with regard to witnesses is unconstitutional, the Court will next consider whether Mr. Williams has standing to request injunctive relief. Relying upon *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Defendants argue that the Plaintiff does not have standing to sue for injunctive relief. In *Lyons,* the plaintiff, Mr. Lyons, after being stopped for a traffic violation, was placed in a chokehold by a City of Los Angeles police officer. The chokehold rendered the plaintiff unconscious and caused damage to his larynx. *Id.* at 97, 103 S.Ct. 1660. The plaintiff brought suit against the City seeking injunctive and declaratory relief barring the use of chokeholds except in situations where the victim was threatening the immediate use of deadly force. *Id.* at 98, 103 S.Ct. 1660. By the time the case had reached the Supreme Court, the City had placed a moratorium on the use of chokeholds. *Id.* at 101, 103 S.Ct. 1660.

In *Lyons,* the Court found that the plaintiff lacked standing to bring a claim for injunctive relief, as the requested relief rested "on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued." *Id.* at 109, 103 S.Ct. 1660. The Court found that in order for Mr. Lyons to have standing to bring suit, he would have to allege a live case-or-controversy. The Court summarized the plaintiff's burden:

In order to establish an actual controversy in this case, Lyons would have not only to allege that [he] would have an-

other encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.

*Id.* at 106, 103 S.Ct. 1660. The Court noted that the "reasonableness of Lyons' fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct. It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Id.* at 107 n. 8, 103 S.Ct. 1660. The threat to Lyons, therefore, was found by the Court to be too speculative since the Court could not conclude that the "odds" of Lyons "be[ing] stopped for a traffic violation" and being "subjected to a chokehold without any provocation whatsoever [was] sufficient to make out a federal case for equitable relief." *Id.* at 108, 103 S.Ct. 1660.

In contrast, the Court concluded in *Kolender v. Lawson,* 461 U.S. 352, 356, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), that plaintiff-Lawson had standing to bring suit for injunctive relief. The Plaintiff in *Lawson* sought declaratory and injunctive relief enjoining the enforcement of California's penal code which required people who "loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a police officer...." *Id.* at 353, 103 S.Ct. 1855. The Court found that Mr. Lawson, who had been stopped and detained for violating the penal code on approximately fifteen occasions during a two-year period of time, had provided a "credible threat" that he might be detained again. *Id.* The Court ultimately concluded that the statute was unconstitutionally vague under the Procedural Due Process Clause of the Fourteenth Amendment. *Id.* at 361, 103 S.Ct. 1855.

The facts presented to the Court in *Lyons* were found to be too "speculative" to warrant standing, while the facts presented in *Kolender* presented a "credible threat" which warranted a finding that standing existed sufficient to obtain injunctive relief. The Court must determine, in this case, where the facts rest on the continuum between being a purely speculative threat to being a "credible threat." The Court finds that the present case is more in line with *Kolender* than with *Lyons,* and holds that Mr. Williams has standing to bring suit for injunctive relief.

As a threshold matter, *Lyons* is distinguishable from this case on the facts. In *Lyons,* there was an intricate chain of events which would have to conjoin in order for Mr. Lyons to suffer the identical injury in the future. Mr. Lyons's potential for future harm was based on the realization of several incremental steps, each laced with speculation, which included: (1) a police officer would have to stop Mr. Lyons for a minor traffic violation, (2) without provocation or resistance, (3) determine that physical force was needed, (4) choose to apply a chokehold and (5) violate city policy.

For the first step, Mr. Lyons would have to be stopped by the police in Los Angeles, a city of approximately 3.8 million people, covering an area of approximately 470 square miles. This vast population and breath of area contributes to the speculative nature of Mr. Lyons being stopped again by police. Mr. Lyons, as a free citizen, could run a red light, make an illegal left turn or jaywalk without the police being the wiser.

Second, the officer, without provocation or resistance, would have to resort to physical force during a routine traffic stop. This act could be viewed as a constitutional violation in and of itself. Next, the officer, out of the multitude of physical restraints conceivable, would have to choose to place Mr. Lyons in a chokehold. Finally, a police officer would place himself in violation of City policy when he used a chokehold.

In contrast, in this case, only one step would be necessary to reach the complained of conduct: an allegation by a corrections officer that the Plaintiff violated a prison rule. The Plaintiff is one of approximately 2,500 inmates confined at MaCI. The odds the Plaintiff coming into contact with a correction officer are much greater than Mr. Lyons coming into contact with a police officer in the city of Los Angeles. By virtue of his confinement, Mr. Williams is in continual contact with correction officers whose job it is to scrutinize closely his behavior for possible rule infractions.

Second, the correction officer would be following procedure when he or she filed a report against Mr. Williams for an alleged violation, while the police officer in *Lyons* arguably would be committing an unconstitutional act by using physical force against a compliant citizen. As for the next step, a correction officer would have one choice once he or she believed that Mr. Williams had committed a rule infraction: to file a charge against him. Conversely, a police officer who had stopped Mr. Lyons could initiate physical contact in many different ways, or opt not to engage in physical contact but merely ticket the traffic violator.

Finally, the correction officer would be following MaCI's policy when he or she filed a charge against him, in contrast to the police officer in *Lyons* who would be in violation of city policy when he or she chose to place a nonresisting citizen in a chokehold. *See, e.g., Lake v. Speziale,* 580 F.Supp. 1318 (D.Conn.1984) (finding that "[i]n this case it is the *conformance* with the policy that brings about the alleged injury and this Court considers the probability of such conformance to be very high.").

Although past conduct is not a perfect predictor of future conduct, it is probative. In *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Supreme Court found that "[o]f course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *See also Kolender v. Lawson,* 461 U.S. at 355 n. 3, 103 S.Ct. 1855 (finding standing to sue for injunctive relief as the plaintiff had been stopped and detained on approximately fifteen occasions during a two-year period of time); *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (finding that the plaintiff's claim that he had "been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted" was sufficient to establish standing.); *Lake,* 580 F.Supp. at 1327 (finding that the plaintiff's being incarcerated in May of 1983 and April of 1979 was one factor that weighed heavily in determining that the plaintiff had standing). Since the infraction leading to this case, Mr. Williams has been charged with two additional rules violations. Mr. Williams has been written up for two Class III violations for being "out of place."[1] The existence of several rules violations being lodged against Mr. Williams is another factor the Court weighs in favor of concluding that Mr. Williams has standing.

Courts have been unwilling to assume, for the purpose of establishing standing, that the party will engage in unlawful behavior in the future. The *O'Shea* Court aptly stated: "We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners." 414 U.S. at 497, 94 S.Ct. 669. Here, the Plaintiff does not have to break the "law" of the prison to come before the RIB; rather, a correction officer merely has to allege that Mr. Williams did so. As soon as the allegation

---

**1.** An "out of place" write-up would be for being literally in the wrong place, for example, standing in another inmate's cell.

is made—irrespective or guilt or innocence—the Plaintiff will find himself before the RIB. Once before the RIB, the unwritten policy of MaCI would be invoked, violating Mr. Williams's procedural due process rights.

In this respect, Mr. Williams's case is akin to the plaintiff's in *Admiral Theatre v. City of Chicago*, 832 F.Supp. 1195 (N.D.Ill.1993). In *Admiral*, the plaintiff, a "sexually-orientated entertainment" establishment brought suit seeking, for one, injunctive relief to allow its dancers to perform without interference from the police. *Id.* at 1201. The plaintiff alleged that the city had a pattern of placing dancers in custodial arrest, even if the dancers had not performed that night. *Id.* The *Admiral* court found:

> [T]his case stands in sharp contrast with Lyons. There the Supreme Court found that plaintiff had no standing because of the many eventualities that would have to come to pass for him again to be exposed to the complained-of conduct. Here, all that has to occur for plaintiffs to suffer the alleged illegal prior restraint complained of … is a custodial arrest based on a police officer's belief that certain dancing is obscene. Once the police officer arrests an Admiral dancer and takes her into custody, the complained-of activity has occurred.

*Id.* The court therefore found that the plaintiff in *Admiral* had standing to bring their First Amendment claim. *Id.* at 1202.

This Court concludes that the Plaintiff's case is harmony with *Admiral.* In both cases, a law enforcement officer's belief, substantiated or not, could trigger unconstitutional conduct on the part of law enforcement. In *Admiral*, it was a police officer's belief that the plaintiff's dancers were performing obscenely. Here, it is any correction officer's belief that the Plaintiff committed an infraction that will subject the Plaintiff to the RIB and its unconstitutional policy.

The Plaintiff and Defendants both cite and rely on *Knox v. McGinnis*, 998 F.2d 1405 (7th Cir.1993), as persuasive authority. In *Knox*, the inmate-plaintiff claimed that the black box he was required to wear when leaving segregation caused him physical injury in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause. *Id.* at 1407. The court described the black box as "a hard plastic box placed over the lock apparatus that runs between a prisoner[s'] handcuffs … to prevent them for picking the locks on their handcuffs." *Id.* at 1407. Prisoners in segregation were required to wear handcuffs, a waist chain, and a black box whenever they left segregation. *Id.* Mr. Knox had been sent to segregation for possessing dangerous contraband and was forced to wear the black box during that period of time. *Id.* at 1407.

Initially, in addressing Mr. Knox's claim for legal relief, the court determined that the defendants were entitled to qualified immunity. The court found that it was not clearly established that the use of a black box was in violation of the Eighth Amendment. *Id.* at 1410. The court next addressed the plaintiff's request for a "preliminary and permanent injunction against further use of the black box." *Id.* at 1413. The court first noted that it had to assume that Mr. Knox would follow the prison's rules. Based on the speculative nature of Mr. Knox again violating prison rules, being placed in segregation and being forced to wear the black box, the Court found that Mr. Knox did not have standing to bring suit for injunctive relief. *Id.* at 1413–14.

The present case is distinguishable for *Knox* for several reasons. First, in order for Mr. Knox to have to wear the black box again, he would have to violate a prison rule, be caught doing so, be found guilty and be placed in segregation. In the case *sub judice*, however, a correction officer would merely have to allege that the Plaintiff violated a rule in order for the constitutional violation to occur. Mr. Knox's potential for future harm is there-

fore much more speculative than the Plaintiff's. And, this Court can assume that even if the Plaintiff herein follows all prison rules, he still can be subject to a rules infraction allegation from a correction officer. In contrast, Mr. Knox would not only have to have an allegation leveled against him, but that allegation would have to be found to have merit and be severe enough to place him in segregation.

Second, the *Knox* court further found that use of the black box was not a clearly established unconstitutional practice. In contrast, this Court has found that denying prisoners the right to call witnesses based on a prejudgment of credibility is a clearly established unconstitutional practice. Even if Mr. Knox could have established standing, the *Knox* court most likely would not have remedied what it did not find to be an unconstitutional practice. In this case, however, this Court and the jury have found that there exists an unconstitutional practice at MaCI that, therefore, is subject to remedy. Based on the foregoing, the Court finds that the Plaintiff has standing to bring suit for injunctive relief.

## C. Whether the PLRA Limits the Relief Available

In *Oluwa v. Gomez,* 133 F.3d 1237 (9th Cir.1998), the court addressed the question of whether § 3626 of the PLRA applies to cases pending when the amended version PLRA was enacted in 1995. The *Oluwa* court found that Congress specifically answered the question. The court quoted legislative history, where Congress indicated: " 'section 3626 of title 18, United States Code, as amended by this section, shall apply with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of this title.' " *Id.* at 1240 (quoting Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, Tit. VIII, § 802(b)(1), 1996 U.S.C.C.A.N. (110 Stat.) 1321–66, 1321–70 *see* 18 U.S.C. § 3626

Note.); *see also Wright v. Morris,* 111 F.3d 414, 418 (6th Cir.1997) (finding that § 3626 applies to pending actions).[2]

Based on the holding of *Oluwa* and *Wright,* the relevant section of the amended PLRA provides:

(a) Requirements for relief.

(1) Prospective relief.

(A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

(B) The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless—

> (i) Federal law requires such relief to be ordered in violation of State or local law;
>
> (ii) the relief is necessary to correct the violation of a Federal right; and
>
> (iii) no other relief will correct the violation of the Federal right.

(C) Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts.·

18 U.S.C. § 3626(a)(1).

The Defendant argues that, based on § 3626(a)(1)(A), the PLRA limits injunc-

---

**2.** In contrast, this Court has previously found that the "old" version of the PLRA applied in

determining whether Mr. Williams required to exhaust his administrative remedies.

tive relief to what is needed to address a particular inmate's rights.

The operative language of the PLRA makes clear that this Court may provide prospective relief only to the extent necessary to correct the federal constitutional violation. 18 U.S.C. § 3626(a)(1)(A). The legislative history defining the provision is instructive: "this 'provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions' by 'limiting remedies to those necessary to remedy the proven violation of federal rights.'" *Plyler v. Moore*, 100 F.3d 365, 369 (4th Cir.1996) (quoting H.R.Rep. No. 21, 104th Cong., 1st Sess. 7, at 24 n. 2 (1995)).

The Court finds that the injunctive relief requested by Mr. Williams does not affect "overall modernization" or "overall improvement in prison conditions," but is narrowly tailored to remedy the deprivation of procedural due process that Mr. Williams has proven. This Court has found that there exists an ongoing violation of a federal right, to wit: a prisoner's procedural due process right to call witnesses before the RIB without a predetermination of credibility. The Court concludes, therefore, that injunctive relief is proper under § 3626 of the PLRA.

### D. Successor Warden

■ The Plaintiff requests that this Court issue an injunction against Defendant Wingard in his official capacity, and against the Madison Correctional Institute, forbidding them from continuing this unconstitutional policy regarding witnesses in RIB hearings. The Defendant responds that the Plaintiff has not presented evidence that the successor warden has continued the same policy with regard to permitting witnesses to testify before the RIB. To establish his right to injunctive relief, the Plaintiff replies that he just needs to show that a policy or custom of MaCI played a part in his constitutional deprivation.

Federal Rule of Civil Procedure 25(d) provides: "When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party." FED.R.CIV.P. 25(d). In *Spomer v. Littleton*, 414 U.S. 514, 522–23, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974), the Court found that although Rule 25 provides for automatic substitution of a party, a court must also determine whether the need for an injunction is moot. *See also Kincaid v. Rusk*, 670 F.2d 737, 741 (7th Cir.1982) (concluding that "the burden is on the complainant to establish the need for declaratory or injunctive relief by demonstrating that the successor in office will continue the relevant policies of his predecessor."); *Tara Enter., Inc. v. Humble*, 622 F.2d 400, 401–02 (8th Cir.1980) (same).

The Seventh Circuit has limited *Spomer* by noting that the issue there was what course to take when "'the wrongful conduct charged in the complaint is personal to [the former official], despite the fact that he was also sued in his then capacity as State's Attorney.'" *Hoptowit v. Spellman*, 753 F.2d 779, 782 (9th Cir.1985) (quoting *Spomer*, 414 U.S. at 521, 94 S.Ct. 685). This court agrees with the analysis provided in *Hoptowit*; thus, mootness only becomes a question when the suit is brought against a person in his or her official capacity alleging conduct that was, in actuality, personal conduct on behalf of the defendant. Here, the conduct complained of is an unwritten policy of MaCI, and not the personal activities of Defendant Wingard. *Spomer* and its holding are, accordingly, inapposite to the present case.

Even assuming, *arguendo*, *Spomer* is controlling, the Court nonetheless finds that the Plaintiff adequately has shown that the unwritten policy of MaCI—prejudging witnesses' credibility—continues. Although the constitutional infraction complained of here occurred in 1996, Lieuten-

ant Fisher and Warden Wingard's depositions were taken in 2000, and the trial on the merits was in December of 2000. It was during deposition testimony and in the trial that the unwritten policy of MaCI with regard to witnesses was revealed and shown still to be extant. The Court therefore, concludes that the unwritten policy continues even though Defendant Wingard is no longer the acting warden of MaCI. Accordingly, there is a necessity for injunctive relief.[3]

### E. Relief Requested

■ The Plaintiff requests the following injunctive relief:

(i) Implement a written policy that any MaCI inmate defending himself in a Rules Infraction Board hearing, including but not limited to a hearing arising out of an alleged positive drug test of the inmate, shall be entitled to have the witnesses he requests be present at said RIB hearing absent an overriding security or institutional concern, which overriding concern shall not include (a) either a determination of MaCI personnel prior to said hearing that any such witness would not be credible or (b) a determination that testimony about a drug test is unnecessary because of the existence of documentation showing a positive drug test.

(ii) A copy of the completed Jury Interrogatories dated December 7, 2000, and Judgment dated December 11, 2000, in this case shall be placed and permanently maintained in any file maintained at MaCI or by MaCI personnel making any reference to Mr. Williams's conviction of a Rule

II, Class 7 at the RIB Hearing conducted March 19, 1996.

(iii) There shall be no retaliation against Mr. Williams arising out of or relating to this lawsuit.

The Defendants make the following responses: (1) that the Plaintiff must demonstrate that there is an on-going unconstitutional practice at MaCI; (2) that the relief must comply with the new version of the PLRA; (3) that the Plaintiff does not have standing to sue for injunctive relief; (4) that the Plaintiff has not demonstrated that the successor warden continues to engage in the alleged unconstitutional policy; and (5) that no policy exists at MaCI that bars the calling of witnesses. These arguments have been addressed by the Court.[4] This Court has found that an unwritten unconstitutional policy exists at MaCI which condones a pre-hearing credibility evaluation of witnesses requested by inmates to appear before the RIB. Having reached this conclusion, the Court finds that injunctive relief is appropriate. The Court must next determine whether the specific terms of the remedy requested are appropriate in this case.

As to the specifics of the relief requested, the Defendants respond to the Plaintiff's first request for a relief—a written policy permitting inmates to call witnesses at RIB hearings even with the existence of documentation showing a positive drug test—by arguing that such policy would require MaCI to afford more protection than required by the Due Process Clause of the Fourteenth Amendment. *See Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In *Hill*, the Supreme Court determined that a court, in reviewing the decision of a prison disciplinary panel, should conclude that

---

**3.** In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court found that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166, 105 S.Ct. 3099.

Here, the Court concludes that the holding in *Kentucky v. Graham* is persuasive, but finds that injunctive relief against MaCI is unnecessary. The injunctive relief requested by the Plaintiff can be enforced against the successor warden.

**4.** *See supra* subparts III.A–D.

due process has been satisfied if "some evidence supports the decision." *Id.* at 455, 105 S.Ct. 2768. The Court stated that this standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.*

The Defendants' argument is misplaced. Initially, this Court notes that the "some evidence" standard was adopted so that reviewing courts could determine if an inmate has been afforded due process by a prison disciplinary board. *Id.* at 456, 105 S.Ct. 2768. And, although *Hill* only requires "some evidence" to support a disciplinary board's decision, that does not mean that the disciplinary board could accept all incriminating evidence while ignoring all exculpatory evidence. A positive drug test would not clear the "some evidence" hurdle in the face of other evidence, for example, that the samples were swapped, that the lab's procedures were tainted, or that another prisoner paid off a guard to substitute urine samples. A positive drug test, just like any other scientific procedure, has limitations, is not foolproof and is subject to human error. Reading *Hill* as the Defendants suggest would turn prison disciplinary boards into no more than kangaroo courts: where evidence is placed on unbalanced scale, with incriminating evidence being given full weight and exculpatory evidence being given no weight.

Furthermore, the Plaintiff's request for a prohibition against determinations "that testimony about a drug test is unnecessary because of the existence of documentation showing a positive drug test" does not mandate that the RIB reach a particular decision in any particular case. After the RIB examines the documentation showing a positive drug test along with the exculpatory evidence provided by the inmate, the RIB may still conclude that there exists sufficient evidence to find that the prisoner did indeed use drugs. The Court there-

fore finds that the Defendants' argument on this point is without merit.

As for the Plaintiff's next request, that a copy of the jury verdict be placed in the Plaintiff's records, the Defendants argue that there is no on-going misconduct that this would cure. The Plaintiff responds that the jury verdict could be used to substantiate Mr. Williams's statements he will make before the parole board.[5]

The Court agrees with the Plaintiff's reasoning in support of having the jury verdict placed in his file at MaCI. Placing the verdict in his file will not overturn the RIB's decision; the Class III rule violation will also be before the parole board. The board will be able to consider all of the relevant information that led to the Plaintiff's rule violation.

The Plaintiff's third and final request is that "[t]here shall be no retaliation against Mr. Williams arising out of or relating to this lawsuit." The Defendant replies that if retaliation would occur, Mr. Williams would be permitted to seek an adequate remedy at law by either filing a grievance, a claim in state court or a claim for retaliation under § 1983.

The Court finds the Defendants' argument on this point persuasive, and denies part (iii) of the Plaintiff's request. This Court cannot assume that retaliation would occur absent an injunction, nor will it enjoin what already is prohibited by law.

## IV. CONCLUSION

The Court hereby **GRANTS** in part the Plaintiff's request for injunctive relief and **ORDERS** the following:

(i) Implement a written policy that any MaCI inmate defending himself in a Rules Infraction Board hearing, including but not limited to a hearing arising out of an alleged positive drug test of the inmate, shall be entitled to have the witnesses he requests be present at said RIB hearing absent an overriding security or

---

5. The Plaintiff also emphasizes that he is not    attempting to reverse the RIB's findings.

institutional concern, which overriding concern shall not include (a) either a determination of MaCI personnel prior to said hearing that any such witness would not be credible, or (b) a determination that testimony about a drug test is unnecessary because of the existence of documentation showing a positive drug test.

(ii) A copy of the completed Jury Interrogatories dated December 7, 2000, and Judgment dated December 11, 2000, in this case shall be placed and permanently maintained in any file maintained at MaCI or by MaCI personnel making any reference to Mr. Williams's conviction of a Rule II, Class 7 at the RIB Hearing conducted March 19, 1996.

**IT IS SO ORDERED.**