**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN M. MORGAN,
              *Plaintiff-Appellee,*

          v.

ERIC MORGENSEN,

                    *Defendant,*

          and

TOM CANADY,

              *Defendant-Appellant.*

No. 04-35608

D.C. No.
CV-03-00132-RSL

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
May 3, 2006—Seattle, Washington

Filed October 6, 2006
Amended November 30, 2006

Before: Stephen Reinhardt, M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

18833

## COUNSEL

Christine O. Gregoire, Attorney General; John C. Dittman (argued), Assistant Attorney General, Olympia, Washington, for the appellant.

Timothy K. Ford (argued), Katrin E. Frank, Cristobal Joshua Alex, Seattle, Washington, for the appellee.

## ORDER

The opinion filed on October 6, 2006, is amended as follows:

On slip opinion page 17457, line 2 of the second full paragraph, change "California" to "Washington".

With this amendment, the panel has voted to grant Appellee's petition for rehearing/error correction, and deny Appellant's petition for rehearing and petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Appellee's petition for rehearing/error correction is GRANTED. Appellant's petition for rehearing and the peti-

tion for rehearing en banc are DENIED. No further petitions shall be entertained.

---

## OPINION

CLIFTON, Circuit Judge:

Plaintiff Steven Morgan, a Washington prisoner, was injured by a defective printing press while working at a prison job for which he had voluntarily applied. Morgan alleges that he told his supervisor, Defendant Tom Canady, about the problem, but that Canady forced Morgan to keep working. Morgan brought a complaint under 42 U.S.C. § 1983, alleging that the requirement to continue working under those circumstances violated his Eighth and Fourteenth Amendment rights. Canady moved for summary judgment, asserting a defense of qualified immunity, which the district court denied. He appeals that decision, and we affirm. In so doing, we hold that, under certain circumstances, dangerous prison working conditions can give rise to an Eighth Amendment claim, notwithstanding the fact that the prisoner initially obtained his specific employment assignment through a voluntary application process within the prison system. We further hold that a prison official is not entitled to qualified immunity when he orders a prisoner to continue operating prison work equipment that the official has been warned and has reason to believe is unnecessarily dangerous.

## I.   Background

Because this case comes to us at the stage of defendant's motion for summary judgment, where the underlying facts are disputed, we "assum[e] that the version of events offered by the non-moving party is correct" when determining whether the defendant should nonetheless be entitled to qualified immunity. *Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th

Cir. 2003). We thus recount the facts, where disputed, based upon the evidence and inferences supporting Morgan's position, recognizing that a trier of fact may make different determinations. *See Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

At the time of the events giving rise to this litigation, Morgan was an inmate in the Monroe Correctional Complex in the State of Washington. He was employed in the prison print shop, where Canady was his immediate supervisor. Print shop work is a Class II Tax Reduction Industry under Washington state law, meaning that prisoners within these industries produce goods for sale to public agencies or nonprofit organizations. *See* REV. CODE WASH. 72.09.100(2). Among prisoners, such employment is desirable, because it requires specialized skill and pays more than ordinary prison labor. Prisoners desiring such work must apply; employment within the Class II industries is "at [the prisoner's] own choice. . . ." *See id.* at (2)(e). It is not the prisoner's choice whether he will or will not work, though. Prisoners who fail to secure Class II work may instead be assigned to work elsewhere, usually within the prison's Class III Institutional Support Industries. *See id.* at (3). Morgan was one of the few prisoners who was selected for Class II employment within the Monroe Correctional Complex prison print shop. As part of his employment, he operated an AB Dick 9800 printing press.

According to Morgan, he and other prison print shop employees noticed that his press was dangerously defective. Loose chains caused the press to buck and shake. Morgan contends that, at some point after he first noticed that his press was malfunctioning, the press bucked and almost tore off two of his fingers while he was operating it. Morgan claims that when he alerted Canady to the problem and asked that it be fixed, Canady pointed to a pile of paper and told Morgan that they had an urgent printing project and that there was no time to stop the press for repairs. Canady told Morgan to continue working and to "just be very careful."

Morgan was subsequently injured when the press caught his hand and tore off his right thumb. Morgan filed a § 1983 action against Canady and other prison officials.[1] He alleged that they subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, and deprived him of liberty without due process, in violation of the Fourteenth Amendment, by compelling him to work under dangerous conditions, resulting in his injury. Defendants brought a motion for summary judgment on the ground of qualified immunity. Morgan conceded that the claims against the other defendants should be dismissed but opposed the motion as to Canady. The district court granted summary judgment on Morgan's complaints as to the other defendants but denied the motion for summary judgment on the basis of qualified immunity as to Canady.

## II.   Discussion

Ordinarily, a district court's interlocutory order denying a motion for summary judgment is not immediately appealable, but there is an exception for a defendant's motion for summary judgment on the basis of qualified immunity. Such an order is immediately appealable. *See Mitchell,* 472 U.S. at 530. Not every issue is open to appellate review at this time, though. In these circumstances, appellate review is generally limited to issues of law and "does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact." *Wilkins*, 350 F.3d at 951 (*quoting Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (per curiam)). This court's review is *de novo*. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).

---

[1]Morgan also filed a workers' compensation claim with the Washington Department of Labor and Industries. The availability of a remedy under state workers' compensation law does not preclude a § 1983 claim. *See Jensen v. City of Oxnard*, 145 F.3d 1078, 1084 n.3 (9th Cir. 1998). We express no view on the merits of his workers' compensation claim; our review is limited to the question of qualified immunity.

**[1]** The doctrine of qualified immunity protects government officials who perform discretionary functions from civil liability, as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing whether a government official is entitled to qualified immunity, we address two questions, in a specific sequence. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, is the right clearly established such that a reasonable government official would know that "his conduct was unlawful in the situation he confronted[?]" *See id.* at 202. We address each of these issues in turn.

### A.    *Violation of a Constitutional Right*

**[2]** The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Incarceration itself renders prisoners dependent upon their keepers and "strip[s] them of virtually every means of self-protection." *Farmer*, 511 U.S. at 833. Thus, while conditions of confinement may be, and often are, restrictive and harsh, they "must not involve the wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347. In other words, they must not be devoid of legitimate penological purpose, *see Hudson v. Palmer*, 468 U.S. 517, 548 (1984), or contrary to "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958).

**[3]** A prisoner's labor can constitute a condition of confinement, where the prisoner has no choice but to work in some capacity within the prison. That is the case here, since Washington law provides that "[e]very prisoner in a state correc-

tional facility shall be required to work." REV. CODE WASH. 72.64.030. The prison officials supervising him have a constitutional obligation to take reasonable measures to guarantee his safety. *See Osolinski,* 92 F.3d at 937.

[4] Not every injury that a prisoner sustains while in prison represents a constitutional violation. A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was "objectively, sufficiently serious"; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place. *Farmer,* 511 U.S. at 834. More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to "perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain." *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); *see also Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995) (analyzing under the Eighth Amendment a prisoner's claim that his health was endangered when he was forced to remove asbestos without protective gear).

Canady argues that, as a matter of law, Morgan cannot make out a constitutional violation because Morgan worked at the print shop, a Class II industry, "at [his] own choice," REV. CODE WASH. 72.09.100(2)(e), and therefore could not have been "compelled" to perform physical labor that endangered life and limb. Morgan, on the other hand, argues that the fact that he chose to work in a Class II industry does not transform the statutorily mandated labor he performed into a voluntary act.

[5] We agree with Morgan. Regardless of how a prisoner obtains his work, once he is employed and not in a position to direct his own labor, his supervisors are not free to visit cruel and unusual punishments upon him. Morgan did not apply to work with a dangerously defective printing press. *See Bagola v. Kindt*, 131 F.3d 632, 645 n.18 (7th Cir. 1997)

("Whether or not a [prisoner] worker's voluntary participation [in a prison work program] would ordinarily remove him from the Eighth Amendment's protective umbrella, it is apparent that voluntariness ends at the point where cruel and unusual punishments begin."). He did not waive his Eighth and Fourteenth Amendment rights by taking a job in the print shop.

**[6]** Canady also argues that, as a matter of fact, Morgan was not "compelled" to work, because he could have refused to work, resigned from his Class II position, filed an administrative grievance within the prison system, or filed a Washington Industrial Safety and Health Act complaint. Morgan argues, however, that refusing to work was not a viable option. He submitted to the district court prison rules and regulations, provisions of the Washington Administrative Code, and the testimony of other prisoners as evidence tending to support that claim. Whether Morgan was actually free to disregard a work order is a factual question that the parties argued about below. The district court expressly found that it was a disputed factual issue and that summary judgment in Canady's favor based on that argument was precluded. As noted above, at this early stage, we have no jurisdiction to review the district court's conclusion that there is a disputed issue of material fact. *See Wilkins,* 350 F.3d at 951. For our purposes, we conclude that the evidence, viewed in the light most favorable to Morgan, shows that Canady violated Morgan's constitutional right not to be compelled to perform work that endangered his health and caused undue pain.

### B.   Whether the Constitutional Right was Clearly Established

**[7]** We proceed to the second qualified immunity inquiry: whether that right was clearly established. A prison official is not entitled to qualified immunity if the law governing his conduct was clearly established such that a reasonable prison official would know that his conduct was unlawful. *See Har-*

*low*, 457 U.S. at 818. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

As an initial matter, Canady argues that he is entitled to qualified immunity as a matter of law, because at the time of the alleged violation, there existed no case law in this circuit, and there was a conflict among the other circuits, as to whether a prisoner could make out an Eighth Amendment violation when he alleges that a prison official compelled him to continue working with defective prison equipment. Canady argues that given the state of the law, he could not have known that he was violating Morgan's clearly established constitutional rights.

Canady's view is not entirely correct. At the time of the alleged constitutional violation, there did exist a conflict among other courts as to whether a prisoner could make out an Eighth Amendment claim when he alleged that a prison official ordered him to work with prison equipment that the official has been told is dangerously defective. *See Arnold v. South Carolina Dep't of Corrs.*, 843 F. Supp. 110, 112-14 (D.S.C. 1994) (surveying case law). There was, however, case law within this circuit governing prison officials' conduct in the situation that Canady confronted. *See Osolinski*, 92 F.3d 934.[2]

In *Osolinski*, a prisoner was injured when an oven door in the prison's family visiting unit fell off its hinges and burned his arm. He brought a § 1983 action alleging that prison officials violated his Eighth Amendment right against cruel and unusual punishment by failing to repair the oven door despite numerous maintenance requests. *See* 92 F.3d at 935. In ana-

---

[2]The fact that there was a potential circuit split on this issue does not preclude our holding that the law was clearly established for the purposes of the § 1983 inquiry. See *Rivero v. City and County of San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002).

lyzing whether it was clearly established that prisoners had a constitutional right to have prison officials repair known safety hazards, the *Osolinski* court turned to the only precedent from our court at the time governing dangerous prison conditions, *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985).

In *Hoptowit*, this court concluded that various conditions of confinement at a Washington prison violated the Eighth Amendment. Among these conditions, "safety hazards found throughout the penitentiary's occupational areas, exacerbated by the institution's inadequate lighting, seriously threaten[ed] the safety and security of inmates and create[d] an unconstitutional infliction of pain" in violation of the Eighth Amendment. *Id.* at 784. The *Osolinski* court then interpreted *Hoptowit* to require a prisoner alleging Eighth Amendment violations arising out of prison safety hazards to show what might be called "danger-plus." That is, he must demonstrate the existence of not only a threat to his safety (in *Hoptowit*, the unsafe occupational areas), but also some additional condition exacerbating that threat (in *Hoptowit*, inadequate lighting). *Osolinski*, 92 F.3d at 938.

The *Osolinski* court favorably cited *Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987), as an example of when a "danger-plus" condition would violate the Eighth Amendment. In *Gill*, a prisoner alleged an Eighth Amendment violation as a result of an injury he sustained after a prison official ordered him to continue working on a ladder that the prisoner had told him was defective and unsafe. *Id.* at 195. The *Osolinski* court noted that "[t]he order to remain on the ladder in *Gill* exacerbated the inherent dangerousness of the defective ladder, rendering the ladder a serious safety hazard, akin to those found in *Hoptowit*." 92 F.3d at 939.

**[8]** The factual situation in the present case is essentially like *Gill*. Morgan, like Gill, alerted his supervisor to a dangerous defect in the equipment he was using as a part of his

prison employment. Canady, like Gill's supervisor, ordered the prisoner to continue working with the defective equipment. Both prisoners were injured as a result of following those orders. *Osolinski*, and its extensive embedded discussion of *Hoptowit* and *Gill*, clearly established that a safety hazard in an occupational area, the dangerousness of which is exacerbated when a prison official orders a prisoner to continue working with it after the prisoner raised a concern about whether it was safe to do so, constituted a violation of the prisoner's Eighth Amendment rights.

[9] Before Morgan's injury, the contours of this right were sufficiently clear that a reasonable prison official would or should have understood that compelling an inmate to continue operating defective and dangerous prison work equipment would violate the Eighth Amendment. Thus, Canady's conduct was not reasonable in light of the precedent that existed at the time of the alleged violation. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).[3] The district court properly denied Canady's motion for summary judgment on the basis of qualified immunity.

**AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS**.

---

[3]We "need not reach the question whether the facts alleged show that appellants acted with deliberate indifference. The focus of our review is the objective requirement. We review Eighth Amendment law to determine whether, in light of clearly established principles at the time of the incident, the officials could have believed their conduct was lawful." *Osolinski*, 92 F.3d at 937.