**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERTA E. SCHROEDER,
        *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA, acting
through the FARMERS HOME
ADMINISTRATION, UNITED STATES
DEPARTMENT OF AGRICULTURE; its
successor in interest, THE RURAL
HOUSING SERVICE OF THE UNITED
STATES DEPARTMENT OF
AGRICULTURE; and STATE DIRECTOR
FOR THE FARMERS HOME
ADMINISTRATION FOR THE STATE OF
OREGON its successor STATE
DIRECTOR FOR OREGON OF THE
RURAL HOUSING SERVICE OF THE
UNITED STATES DEPARTMENT OF
AGRICULTURE,
        *Defendants-Appellees.*

No. 07-36073

D.C. No.
2:06-cv-00818-SU

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
March 5, 2009—Portland, Oregon

Filed June 22, 2009

Before: Susan P. Graber, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

7393

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

William F. Schroeder, Vale, Oregon, for the plaintiff-appellant.

Suzanne A. Bratis and Kelly A. Zusman, Assistant United States Attorneys, United States Attorney's Office for the District of Oregon, Portland, Oregon, for the defendant-appellee.

Gideon Anders, National Housing Law Project, Oakland, California, and Ed Johnson, Oregon Law Center, Portland, Oregon, for the amici curiae.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Plaintiff-Appellant Alberta Schroeder appeals a grant of summary judgment for the United States in her suit seeking

to quiet title in an apartment complex she owns and operates. Under the National Housing Act loan program into which she entered in 1984, Schroeder was required to use her property exclusively as low-income housing until she fully repaid her loans. Schroeder argues that, although the loans have not yet come due, the government must now accept payment in full on her loans, thereby allowing her to terminate her participation in the National Housing Act program. The district court ruled that the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA) forecloses Schroeder's arguments and declined to grant equitable relief. We affirm the decision of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Housing Act of 1949 and the Emergency Low Income Housing Preservation Act of 1987

Congress passed the Housing Act of 1949, 42 U.S.C. §§ 1441-1490, to encourage private investment in housing for elderly and low-income rural residents. Section 515 of Title V of the Housing Act authorized the Department of Agriculture Farmers Home Administration (FmHA) (which was later incorporated into the Rural Housing Service (RHS)) to make direct loans to borrowers seeking to finance affordable housing (RHS loans or § 515 loans). *See* 42 U.S.C. § 1485. Involved property owners, in exchange for reduced interest rates and other subsidies, agreed to rent their covered properties only to qualified elderly and low-income tenants at affordable rates until the owners had fully repaid their RHS loans. 42 U.S.C. § 1490a. Initially, loans made under this program provided borrowers with an unrestricted right to repay their loans at any time. *Franconia Assocs. v. United States*, 536 U.S. 129, 135 (2002).

In 1987, responding to fears that the supply of affordable rural housing was dwindling because borrowers were prepaying their RHS loans, Congress enacted ELIHPA, 42 U.S.C.

§ 1472(c).[1] Under ELIHPA, RHS may accept "prepayments" on covered loans only if the property owner first complies with ELIHPA's "elaborate requirements" designed to preserve low-income housing. *DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1035-36 & n.2 (9th Cir. 2006) (describing prepayment procedures under 42 U.S.C. § 1472(c)); *see also Kimberly Assocs. v. United States*, 261 F.3d 864, 867 (9th Cir. 2001).

Under these procedures, the owner must first give notice of intent to prepay. 42 U.S.C. § 1472(c)(3). Then, the government must offer the owner a financial incentive to remain in the program. *Id.* § 1472(c)(4)(A). If the owner still wishes to prepay, the owner must offer to sell the property to any qualified nonprofit organization or public agency at fair market value. *Id.* § 1472(c)(5)(A)(i). If the property is not sold within 180 days, RHS may then accept the prepayment from the owner. *Id.* § 1472(c)(5)(A)(ii); *DBSI/TRI*, 465 F.3d at 1035.

In 2002, in response to property owners' legal challenges to ELIHPA, the Supreme Court held that the Act "effected a repudiation of" the existing loan contracts. *Franconia*, 536 U.S. at 143. On remand, the Court of Federal Claims clarified the property owners' rights and recourse: "The promissory notes at issue could not be much clearer in allowing plaintiffs to prepay at any time, indicating unambiguously that '[p]repayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower.' " *Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 730 (2004) (alteration in original). The government, therefore, has

---

[1]ELIHPA originally applied only to loans entered into with RHS before December 21, 1979. *See Franconia*, 536 U.S. at 136. In 1992, Congress extended the Act's restrictions to include loans made between December 21, 1979 and December 15, 1989, exclusive. *Id.* at 137 n.3 (citing 42 U.S.C. § 1472).

.

a "concomitant obligation" to accept the prepayment, and ELIHPA repudiated the property owners' rights. *Id.* at 730-33. As a result, a property owner whose contracts have been adversely affected by ELIHPA may bring a claim for damages against the government. *Franconia*, 536 U.S. at 143.

Because the United States was not acting in its capacity as sovereign in enacting ELIHPA, the government may not assert a sovereign immunity defense in such an action. *Id.* at 141 ("'When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.' " (quoting *Mobil Oil Exploration & Producing Se., Inc. v. United States*, 530 U.S. 604, 607 (2000))); *see also Kimberly*, 261 F.3d at 867-70. But the United States is not "free to disobey" ELIHPA; it may accept a borrower's prepayment only after following the procedures described in ELIHPA. *DBSI/TRI*, 465 F.3d at 1041. Therefore, borrowers who wish to prepay must either comply with ELIHPA's procedures or seek damages under the Tucker Act in the Court of Federal Claims. *See Franconia*, 536 U.S. at 138; *DBSI/TRI*, 465 F.3d at 1041.

## II. Schroeder's Property and Loans

Schroeder currently owns and operates a six-unit low-income housing project located in Heppner, Oregon, known as the Willow View Apartments. Schroeder's predecessor, the Midas Company, purchased the property in 1975 using a forty-year, $170,300 loan from the FmHA (the 1975 Loan), the terms of which were evidenced by a promissory note and mortgage on the property.

Schroeder purchased the Willow View Apartments in August 1984, approximately three years before ELIHPA became law. With the government's consent, Schroeder assumed the 1975 Loan and executed another promissory note, a deed of trust, and a loan agreement as part of a fifty-year, $3500 Housing Act loan (the 1984 Loan). Accordingly,

Schroeder became liable for two loans on the property (collectively, the Loans), which respectively became due in 2015 and 2034. Both promissory notes gave Schroeder the unconditional right to prepay in full the principal sums due thereon at any time. However, the deed of trust associated with the 1984 Loan included a provision requiring Schroeder to use the property only for low-income housing for a twenty-year period, beginning in August 1984 (the Loan Covenant). In addition, the 1984 loan agreement (which referenced both of the Loans) included a provision further restricting the use of the property by stating that, "[s]o long as the loan obligations remain unsatisfied, the Borrower shall not use the house for any purpose other than as rental housing and related facilities for eligible [i.e., elderly and low-income] occupants." Schroeder operated the property for the next twenty years, making regular payments on the Loans.

The Loan Covenant expired on September 1, 2004. That same day, Schroeder attempted to tender the full amount outstanding on both Loans. In her payment request, Schroeder stated that she had difficulty managing the property due to her advanced age and that the property's rental income was insufficient to permit her to hire a manager. In March 2006, the government sent Schroeder an incentive offer to continue operating the property as low-income housing. In April 2006, Schroeder tendered full payment on both Loans, but her tender was rejected by RHS. Schroeder, in turn, rejected RHS's incentive offer and attempted to sell the property to a local housing authority at a substantially higher price than RHS's appraisal value. RHS continued to refuse to allow Schroeder to prepay the remaining debt owed on the Loans, maintaining that ELIHPA prohibits prepayment unless a property owner specifically complies with the Act's procedural requirements.

## III. Procedural History

In May 2006, Schroeder filed this suit in Morrow County, Oregon, Circuit Court, seeking to compel the government to

accept her full payment of the Loans, and to quiet title to her property. The government removed the case to federal court.

The parties filed cross-motions for summary judgment. Schroeder argued that ELIHPA does not apply to her property because the Loan Covenant had expired in 2004 and because she did not tender a "prepayment" within the meaning of ELIHPA. She also offered equitable arguments in support of her quiet title action.

A magistrate judge recommended granting Schroeder's motion for summary judgment and denying the government's motion for summary judgment. The magistrate judge concluded that, because the Loan Covenant had expired, equity favored granting Schroeder's quiet title action. The government filed objections. The district court rejected the magistrate judge's proposed findings and conclusions, and held that Schroeder was not entitled to quiet title to her property. Schroeder appeals.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review de novo the district court's grant of summary judgment. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). We review for abuse of discretion the district court's decision to grant or deny equitable relief. *See Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 977 (9th Cir. 2003). Federal common law applies to the contracts at issue. *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985).

## DISCUSSION

### I. The Application of ELIHPA to the Loans

Schroeder first argues that ELIHPA does not apply to her Loans because (A) the final attempted payment on the Loans was not a "prepayment," which triggers ELIHPA's proce-

dures but, rather, a regularly scheduled payment; and (B) ELI-HPA does not create a new, enforceable restricted-use period. We address these arguments in turn.

### A. Schroeder's Attempted Payment Constituted a Prepayment.

Schroeder argues that the Loans' maturity dates are the dates by which the total loan balances would be paid based on the loan documents' monthly installment schedules (the installment dates). Using this approach, she maintains, her 1975 and 1984 loans matured in 1995 and 1993, respectively, and thus, her 2004 attempted payment was not a "prepayment" under ELIHPA and should have been allowed.[2] The government contends that the maturity dates are instead the dates the loan documents identify as the "due and payable" dates, i.e., 2015 and 2034, respectively (the horizon dates).

**[1]** Schroeder's novel argument fails. In interpreting contractual terms under federal common law, we give effect to the parties' intentions as ascertained from the terms themselves. *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). In this case, a review of the relevant loan documents reveals that the parties intended the horizon dates, not the installment dates, to constitute the maturity dates.

---

[2]The government argues that Schroeder is making this argument for the first time on appeal and, therefore, she has waived it. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) ("[A]ppellate courts will not consider arguments that are not 'properly raise[d]' in the trial courts. . . . [T]he argument must be raised sufficiently for the trial court to rule on it." (citations omitted) (second alteration in original)). Schroeder, however, argued generally before the district court that she had not tendered a prepayment. We therefore consider the merits of her argument.

**[2]** First, at the time of the notes' execution, the horizon dates were the only dates certain. At that point, the parties could not have known the exact date by which the monthly installments would ultimately satisfy the principals because the dates were subject to unpredictable factors (e.g., the total rent received from tenants, which in turn determined the interest rate applied to the principal). Therefore, the parties could not have intended to establish the 1993 and 1995 installment dates as the maturity dates, because they could not have known that the principals would be satisfied on those dates.

**[3]** Second, Schroeder's interpretation linking the installment dates to the maturity dates would effectively nullify the prepayment clause. The promissory notes' clauses explicitly permit prepayments at the borrower's option. Therefore, under Schroeder's theory, the final payments would necessarily coincide with—indeed, they would establish—the maturity dates. Under this reading, no final payment could constitute a prepayment, and the language permitting prepayments would essentially be a nullity. Consistent with common law principles of contract interpretation, we assume that the agreement's drafters did not intend such a result. *Cf. Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 827 (9th Cir. 1957) (declining to interpret agreement so as to render clause a nullity); 17A C.J.S. *Contracts* § 303.

**[4]** Third and finally, under common law property standards, a mortgage instrument's prepayment clause generally accompanies, and is distinct from, the specified loan maturity date. *See, e.g.*, *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 566 (9th Cir. 1988); 55 Am. Jur. 2d *Mortgages* § 345. To read the notes to equate the maturity dates with the final payments under the prepayment clause, as Schroeder urges, would violate this principle. Thus, common law further supports our conclusion that the parties intended the loan documents' horizon dates, not their installment dates, to constitute the loans' maturity dates.

**[5]** Having determined as much, it is apparent that Schroeder's 2004 payment tender constituted a "prepayment" under ELIHPA. The regulations interpreting ELIHPA define a loan "prepayment" as "[p]ayment in full of the outstanding balance on an Agency loan prior to the note's originally scheduled maturity date." 7 C.F.R. § 3560.11. Schroeder cites no authority contrary to this reasonable regulatory interpretation, to which we must defer, *see Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984). Therefore, because the "note[s'] originally scheduled maturity date[s]" were in 2015 and 2034, respectively, Schroeder's 2004 attempted payment constituted a prepayment under the applicable regulations.

The Eighth Circuit recently confronted a similar scenario and came to the same conclusion. *See Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir. 2005) (reasoning that "[p]ermitting a Section 515 debtor who has made substantial prepayments to label a final payment thirty years prior to the original maturity date as anything other than a prepayment would be to elevate technical form over substance"). To hold otherwise, the *Charleston Housing Authority* court concluded, "would create a loophole in [ELIHPA's] prepayment restrictions large enough [to] swallow all of Congress's clearly expressed intent." *Id.*[3]

**[6]** We therefore conclude that Schroeder's final payment tender in 2004 was not a final payment, but a prepayment. As

---

[3]*Charleston Housing Authority*'s interpretation of the "unmistakability doctrine" differed from our approach in *Kimberly*. *See DBSI/TRI*, 465 F.3d at 1041 n.7 (noting that, contrary to our conclusion in *Kimberly*, *Charleston Housing Authority* held that the "unmistakability doctrine *did* bar the owners' attempts to circumvent ELIHPA in prepaying Section 515 loans); *Kimberly*, 261 F.3d at 869 (noting that the doctrine allows "the Government to make agreements that bind future Congresses, but only if those contracts contain an unmistakable promise" (internal quotation marks omitted)). However, we have never taken issue with *Charleston Housing Authority*'s view on the meaning of prepayment under ELIHPA.

a result, it was subject to the terms—including the elaborate procedural requirements—of ELIHPA that govern prepayments.

## B.   ELIHPA Created a New Restricted-Use Period.

**[7]** Schroeder next contends that ELIHPA does not extend the Loan Covenant and, thus, she had the right to pay the balance on her Loans as of September 2004. The relevant provision in the 1984 deed of trust states:

> The borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949 and FmHA regulations then extant during this 20 year period beginning August 31, 1984. No person occupying the housing shall be required to vacate prior to the close of such 20 year period because of early repayment.

Thus, Schroeder contends, she was free to discontinue offering § 515 housing upon the expiration of the aforementioned twenty-year period. Schroeder's argument, however, overlooks the fact that the deed of trust is not the only document imposing obligations on the use of the property; the loan agreement, which she voluntarily executed in 1984, imposes additional restrictions. That agreement requires her to use the property as low-income housing "so long as the loan obligation remains unsatisfied." Under ELIHPA, Schroeder may not repay the loans—and thus the "loan obligation [will] remain[ ] unsatisfied"—until either: (1) she completes the prepayment procedures outlined in ELIHPA; or (2) the loan period expires. *See Franconia*, 536 U.S. at 143. Thus, until one of these events occurs, Schroeder is bound to continue using her property as low-income housing.

**[8]** It is undisputed that Schroeder has not completed ELIHPA's procedures and that the latter of the Loan terms will

not expire until 2034. Therefore, Schroeder is still bound by the requirements, as imposed by the loan agreement and ELI-HPA, to use the property as low-income housing. The district court did not err in so holding.

## II.  The District Court Did Not Abuse its Discretion in Declining to Quiet Title to Schroeder's Property.

Finally, Schroeder argues that the district court abused its discretion in declining to quiet title to her property. As stated above, because this suit involves contracts with the federal government, federal common law applies. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366 (1943); *N. Side Lumber Co.*, 753 F.2d at 1484.

We assume, without deciding, that a quiet title remedy is available to Schroeder under federal common law. *See Kimberly Assocs.*, 261 F.3d at 870. *But see DBSI/TRI*, 465 F.3d 1041 (questioning scope and validity of *Kimberly*). Even under this assumption, however, we conclude the district court did not abuse its discretion in declining to grant that relief.

**[9]** First, equitable relief is not appropriate where an adequate remedy exists at law. *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("'It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law . . . .' " (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))). Here, as the district court rightly determined, an adequate remedy exists. The Supreme Court has made clear that, by prohibiting unfettered prepayment, ELIHPA "effected a repudiation of" existing loan contracts. *Franconia*, 536 U.S. at 143; *see also Franconia*, 61 Fed. Cl. at 740. Therefore, Schroeder may seek compensation for that repudiation in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491. *See DBSI/TRI*, 465 F.3d at 1041 & n.8 ("[T]he Supreme Court noted the availability of a damages action

under the Tucker Act to compensate owners for contracts breached because of ELIHPA." (citation omitted) (citing *Franconia*, 536 U.S. 129)).

[10] Second, Schroeder has not shown that the equities favor relief. In declining to grant equitable relief, the district court concluded that "the importance of preserving that which ELIHPA seeks to preserve (*i.e.*, a reduction in Section 515 mortgage repayments, a reduction in the loss of low-income housing units, and a reduction in the displacement of Section 515 residents) outweighs the burden to Plaintiff of complying with ELIHPA." We agree.

## CONCLUSION

For the reasons stated above, the district court did not err in holding that ELIHPA applies to Schroeder's property. Moreover, the district court did not abuse its discretion in declining to quiet title to Schroeder's property.

**AFFIRMED.**