NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 17, 2014[*]
Decided April 25, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-3299

| | |
|---|---|
| TRENTON BRATCHETT,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>BRAXTON ENVIRONMENTAL<br>SERVICES CORP., et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District<br>Court for the Eastern District of<br>Wisconsin.<br><br>No. 08-CV-00880<br><br>Lynn Adelman,<br>*Judge.* |

**O R D E R**

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Trenton Bratchett, a former Wisconsin inmate, lost his finger in a tire-shredding machine during his prison work-release assignment at Braxton Environmental Services, a tire-recycling company. He brought this suit under 42 U.S.C. § 1983, asserting that the company and four defendants involved in the prison's work-release program were deliberately indifferent to his unsafe working conditions. The district court granted summary judgment, and he appeals. We affirm in part, and vacate and remand in part.

From mid-2005 to mid-2006, Bratchett served the final year of his state sentence at Felmers O. Chaney Correctional Center, a minimum-security prison focused on reintegrating prisoners into the community through a work-release program. He accepted a job assignment in late 2005 at Braxton Environmental Services (also known as A&E Services), where he recycled used tires by separating the rubber from wires inside the tires. Immediately after he started working, however, Bratchett recognized certain dangerous working conditions at the work site, including old tire-shredding machinery and a lack of protective gear. Despite the hazardous nature of the machines, he testified at his deposition, he received no safety training.

Over the next seven months, Bratchett sought to leave his job by complaining about the unsafe working conditions to Wayne Hibbler, the prison's work-release coordinator, and Grady Davis, a contractor hired to provide employment support to prisoners. Bratchett explained that he needed their approval to leave the job because refusing to work violated the program's rules. He recalled showing Davis the scratches on his arm caused by handling wires and warning him that "[p]eople down there [are] getting hurt." He added that Hibbler and Davis visited the work site a dozen times and could see the old machinery and lack of protective gear. And on one occasion when Bratchett sought treatment for the scratches, he overheard Hibbler telling the prison nurse that she was granting too many requests for inmates to leave their jobs at Braxton. Another inmate, Michael Mays, testified at his deposition that other inmates had warned Hibbler and Davis of the dangerous working conditions. As Mays recalled, one man's specific explanation for why the job was dangerous involved faulty machinery: "He said, at first, the mud, and then the machinery. It was faulty. The machinery was faulty, you know, and it could harm—you could harm yourself working on the machinery." Because that prisoner refused to go back to work, Mays said, Hibbler and Davis sent him to a higher-security prison that inmates called "the hole."

Bratchett grew increasingly concerned about safety conditions in June 2006 after a coworker, Larry White, had his arm get caught in the conveyer belt, breaking his arm. White stated in a police report that his supervisor had instructed him to use his hand to

retrieve a piece of tire stuck in the belt. Bratchett described White's injury in a written request for a new job. This request was apparently lost after Bratchett handed it to a guard instead of putting it into a lockbox. When Bratchett received no response, he complained about his assignment to his social worker, Christine Stone, as well as Eloise McPike, Hibbler's supervisor. Both told him that he needed to ask Hibbler for a new job.

A few days later, Bratchett's supervisor at the tire-recycling facility ordered him to grab wires that were blocking the shredding machine, which, he assured Bratchett, was turned off. The machine restarted suddenly and severed Bratchett's index finger as he removed the wires. Bratchett said that he had no choice but to obey his supervisor's request; any act of noncompliance would result in Hibbler or Davis taking him back to prison and locking him up. Believing that his constitutional rights had been violated, he sued the employees running the prison's work-release program, the medical staff who treated his finger, and Braxton Environmental Services. (He later voluntarily dismissed the claims against the medical staff, so we do not discuss them further.)

As discovery progressed, Bratchett sought reports from local police and the Occupational Safety and Health Administration to show that the job was dangerous. These reports noted that two workers had been injured by machinery in May and June 2006. The police report from June recounted White's injury. OSHA inspected the site the next day and ultimately found eight serious violations, including unsafe machinery and a lack of training. The OSHA report also cited the company for failing to report that a worker was injured in May (losing three fingers in a machine, Bratchett testified at his deposition). The OSHA report observed that the tire-shredding machinery posed a "[p]otential for severe bodily injury from being caught in, crushed, struck by, or receiving electrical shock in the event of an unexpected start-up … Injuries can include broken bones, head injury, lacerations, and cuts or burns."

The district court recruited counsel at Bratchett's request, but the case continued to move slowly. Though the operative complaint was filed in July 2009, service was not completed until August 2010, when Eric Broxton, the owner of Braxton Environmental Services, waived service. Discovery closed in December 2012, and the four prison staff moved for summary judgment. After Bratchett's lawyer missed the response deadline, the court granted an extension but warned that failure to respond would result in dismissal of the entire suit. Counsel responded on the court-ordered deadline.

The district court granted summary judgment to Davis, Hibbler, McPike, and Stone, concluding that they were not aware of a risk of serious injury and thus could not be deliberately indifferent to that risk. The judge acknowledged that Bratchett "paints a compelling picture regarding the objective risk of injury … especially in light of the injury suffered by Larry White," but nonetheless found "no evidence" to show that the defendants were deliberately indifferent. The court reasoned that the four defendants were unaware of the job's risks because they heard only vague complaints of workplace dangers. The court noted that Bratchett's complaints "mainly focused on his pay issues and his dislike of getting muddy or scratched,"  leading the defendants to infer that his vague reference to dangers referred to the mud and scratches. The court then dismissed with prejudice the claims against the two remaining defendants, Braxton Environmental Services and its owner, Eric Broxton, concluding that Bratchett failed to prosecute these claims by not taking any action against them after they failed to file an answer. The court reminded Bratchett's lawyer that he could move to reinstate these claims within 21 days, *see* E.D. WIS. CIV. L. R. 41(c), but counsel filed no such motion.

On appeal we understand Bratchett (who is now litigating his case pro se) to argue that the district court erroneously granted summary judgment for the four work-release employees. He maintains that the defendants were aware of the job's dangers, pointing to his deposition testimony that he complained about unsafe working conditions and that the prison nurse filed transfer requests for other prisoners injured at his work site. For their part, the defendants counter that Bratchett did not face an objectively serious risk and also insist that "Bratchett caused his own injury."

Under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here the district court concluded that the faulty machinery and lack of protective gear at the tire-recycling facility posed an objectively substantial risk. Given the OSHA report listing eight serious violations of safety rules and a record showing three serious injuries from machines in a three-month period, the court's conclusion regarding this part of the *Farmer* test was correct. *See Bagola v. Kindt*, 39 F.3d 779, 780 (7th Cir. 1994) (per curiam) (inmate faced serious risk of amputation from unsafe machinery); *Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir. 1988) (lax control of tools in prison created pervasive risk of harm from use of tools as weapons).

The other part of the *Farmer* test required Bratchett to show that the defendants acted with deliberate indifference to his safety or the safety of other inmates. Regarding McPike and Stone, the court properly determined that there was not enough evidence

for a jury to find either was deliberately indifferent to a risk of serious injury. According to the record, Bratchett informed them that his workplace was unsafe on one occasion, but he did not tell them that Hibbler was ignoring his job complaints. It is undisputed that they believed Hibbler would help Bratchett find a new job, so they were not deliberately indifferent in delegating the task to the employee in charge of the work-release program. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009).

The situation regarding Hibbler and Davis is more complicated. The district court overlooked key evidence that would allow a jury to find that both men knew of a substantial risk of serious injury and did nothing to protect Bratchett. As Bratchett notes in his brief, the court's decision does not mention (1) his testimony that he overheard Hibbler tell the prison nurse to stop filing transfer requests for inmates injured at the tire-recycling facility or (2) that he showed Davis the scratches on his arms caused by a lack of protective gear and warned him that "[p]eople down there [are] getting hurt." Nor does the court acknowledge Mays's testimony that Hibbler and Davis were told of the specific risk of being harmed by faulty machinery. The defendants' knowledge of cuts and scratches suffered from a lack of protective gear, combined with the warning of dangerous machinery, could allow a jury to find that the two men knowingly forced Bratchett to keep working in unduly hazardous conditions. *See Smith v. Peters*, 631 F.3d 418, 420–21 (7th Cir. 2011) (reversing dismissal of prisoner's deliberate-indifference claim that he was forced to work at hard labor in dangerous conditions, including uprooting tree stumps in cold weather without protective gear or gloves); *Hall v. Bennett*, 379 F.3d 462, 465–66 (7th Cir. 2004) (vacating grant of summary judgment for defendants who forced inmate to strip electrical wire without protective gloves); *cf. Bagola v. Kindt*, 131 F.3d 632, 646–47 (7th Cir. 1997) (affirming summary judgment where defendants took reasonable steps to fix broken machines and provide training).

The defendants also assert that Bratchett cannot prove causation under state tort law. "But ordinary tort principles do not govern suits charging federal constitutional torts." *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 980 (7th Cir. 2013). Because inmates have been deprived of the ordinary means of protecting themselves, liability in deliberate-indifference cases can be found when prison staff fail to protect a prisoner from a known danger. *See id.* at 980–82 (causation of detainee's death could be shown by social worker's failure to act despite known risk of suicide); *Cobige v. City of Chicago*, 651 F.3d 780, 783 (7th Cir. 2011) (causation of arrestee's death in police lockup could be shown by evidence that guards left her in cell despite complaints of abdominal pain); *Morgan v. Morgensen*, 465 F.3d 1041, 1045–46 (9th Cir. 2006) (causation could be shown

where prison supervisors forced prisoner to work using defective printing press). Therefore we vacate the decision as to Hibbler and Davis.

Next we understand Bratchett to challenge the district court's dismissal of his § 1983 claims against Braxton Environmental Services and its owner for want of prosecution. Neither the company nor its owner ever filed an answer, and the court dismissed these claims after three years passed without a motion for default judgment. Bratchett believes that the court's decision was erroneous because his recruited lawyer was the one who failed to seek default judgments.

The district court abused its discretion when dismissing these claims without a warning and without considering "essential factor[s]," such as the frequency of delays, the effect on the court's calendar, the resulting prejudice to the defendants, or the possibility of alternative sanctions. *Sroga v. Huberman*, 722 F.3d 980, 982 (7th Cir. 2013) (quoting *Kruger v. Apfel*, 214 F.3d 784, 786 (7th Cir. 2000)); *see Johnson v. Chi. Bd. of Educ.*, 718 F.3d 731, 732–33 (7th Cir. 2013); *Ball v. City of Chicago*, 2 F.3d 752, 756 (7th Cir. 1993). A local rule for the Eastern District of Wisconsin states that the district court should give 21 days' notice that it intends to dismiss claims when the defendant has not filed an answer. E.D. WIS. CIV. L. R. 41(b). The district court suggested that Bratchett was unlikely to succeed on his § 1983 claims given that Wisconsin establishes worker's compensation as his exclusive remedy for workplace injuries. *See* WIS. STAT. § 102.03(2). But these are very different claims with different bases of liability. Deliberate indifference requires a mental state akin to criminal recklessness, *see Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008), whereas worker's compensation claims are awarded without regard to fault, *see Aslakson v. Gallagher Bassett Servs., Inc.*, 729 N.W.2d 712, 717 n.14 (Wis. 2007). It is true, as the court also noted, that Bratchett has to show that a private company and its owner are state actors for purposes of § 1983. But Bratchett alleges that the company contracted with the state Department of Corrections to provide jobs for prisoners, plausibly making the company's actions "fairly attributable to the state." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009). The company and its owner have never filed an answer, so they have not denied this allegation.

The judgment with respect to Bratchett's claims against Broxton, Davis, Hibbler, and Braxton Environmental Services is VACATED, and the case is REMANDED for proceedings on those claims. In all other respects the judgment is AFFIRMED.